SANDRA K. CLARK, Appellant, v DENNIS K. CLARK, Respondent. (Proceeding No. 1.)

DENNIS K. CLARK Respondent, v SANDRA K. CLARK, Appellant. (Proceeding No. 2.)

Third Department, April 26, 1979

## APPEARANCES OF COUNSEL

*Bruno & Sommers (George H. Barber* of counsel), for appellant.

*Garry, Cahill, Edmunds & Breslin (Charles E. O'Brien* of counsel), for respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

These appeals raise an issue as to the manner in which the newly enacted Uniform Child Custody Jurisdiction Act (Domestic Relations Law, § 75-a *et seq.)* is to be applied to the facts herein. The parties were married in Albany, New York in July of 1972 and in December of that year a daughter, Danielle Sandra Clark, was born. The parties apparently encountered certain marital problems in early 1975, but in August, 1975 they were reunited and the family moved to Virginia. In July of 1976 the mother and daughter returned to New York while the father remained in Virginia. In April of 1978 Danielle went to Virginia to visit her paternal grandparents and while she was there her father commenced an action for divorce in the Circuit Court of Fairfax County, Virginia, seeking custody of his daughter. The mother appeared specially to contest the court's jurisdiction, but her jurisdictional argument was rejected and in August, 1978 a divorce decree was entered in Virginia granting custody of Danielle to her father. In September of 1978 the mother traveled to Virginia, removed her daughter from the grandparents' home and brought her back to New York. Shortly thereafter, she commenced a proceeding in Family Court seeking custody of

Danielle. In November, 1978 the father commenced a proceeding in Family Court to enforce his rights under the Virginia divorce decree. Family Court dismissed the petition for custody and granted the father's petition.

█ Pursuant to section 75-n of the Domestic Relations Law, the courts of this State must recognize and enforce a custody decree of a sister State court "which *had assumed* jurisdiction" under jurisdictional prerequisites substantially in accordance with the act (emphasis added), and pursuant to section 75-o, a court of this State may not modify a custody decree of a sister State court unless it appears that the court which rendered the decree "does not *now have jurisdiction* under jurisdictional prerequisites substantially in accordance with" the act (emphasis added). Accordingly, where, as here, there exists a custody decree by a court of another State, the threshold inquiry when a custody proceeding is commenced in this State is twofold. First, it must be determined whether the sister State court had jurisdiction to render the custody decree and, second, whether, at the time the proceeding is commenced in this State, the sister State court would have jurisdiction to modify its decree. In answering these questions, reference must be made to the jurisdictional requirements contained in section 75-d of the Domestic Relations Law.

On the first issue, since Danielle had been in Virginia for only about one month when the custody proceeding was commenced in the Virginia court, Virginia was not the "home state" (see Domestic Relations Law, § 75-c, subd 5), and, thus, paragraph (a) of subdivision 1 of section 75-d is not applicable. However, the parties and Danielle had resided in Virginia for some 11 months, from August, 1975 to July, 1976, and, after the departure of Danielle and her mother, the father remained in Virginia where his parents reside. Moreover, when the proceeding was commenced in Virginia, Danielle was present in that State with no outstanding custody decree and there was clearly a dispute as to who should have custody. Thus, the factual circumstances at the time the Virginia court assumed jurisdiction appear to meet the requirements of paragraph (b) of subdivision 1 of section 75-d.* On the second

---

* Paragraph (b) of subdivision 1 of section 75-d of the Domestic Relations Law bases jurisdiction on the best interests of the child, requiring that "(i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training and personal relationships".

issue, it is apparent that at the time the custody proceeding was commenced in this State, Virginia may have become the "home state" since Danielle had resided there with her father for six months from April to September (see Domestic Relations Law, § 75-c, subd 5) and the Virginia court would therefore, have jurisdiction under paragraph (a) of subidivision 1 of section 75-d. Moreover, even if paragraph (a) were not applicable, paragraph (b) would be since the only change in circumstances was Danielle's absence from Virginia as a result of the mother's unlawful act.

Based upon our resolution of these threshold issues, we conclude that the Virginia custody decree must be recognized and enforced (Domestic Relations Law, § 75-n) and that the courts of this State cannot modify that decree (Domestic Relations Law, § 75-o). We also note that even if the Virginia court does not now have jurisdiction, Family Court could properly refuse to exercise jurisdiction to modify the Virginia decree since the mother improperly removed Danielle from the custody of the father, who had been granted custody by the decree (Domestic Relations Law, § 75-i, subd 2). The policy articulated in the act is a strong one (see *Martin v Martin,* 45 NY2d 739, 742) and the above construction promotes the general purposes of the act as required by subdivision 2 of section 75-b. Finally, we reject appellant's contention that the act required Family Court to obtain a transcript of the Virginia court proceedings. Section 75-v applies only when a court of this State has taken jurisdiction of the case.

The orders should be affirmed, without costs.

SWEENEY, KANE, STALEY, JR., and MAIN, JJ., concur.

Orders affirmed, without costs.