Gerald MAYER, Plaintiff-Respondent, v. Nancy L. MAYER, Defendant-Appellant.

Court of Appeals

*No. 78–099. Submitted on briefs April 2, 1979.—*
*Decided June 29, 1979.*
(Also reported in 283 N.W.2d 591.)

For the appellant the cause was submitted on the briefs of *Gerhardt F. Getzin* and *Wisconsin Judicare, Inc.* of Wausau.

For the respondent the cause was submitted on the brief of *Christopher H. Buslee* and *Meriam and Weiler* of Ladysmith.

Brief amicus curiae was filed by *Martha L. Fineman* of Madison.

Before Dean, P.J., Donlin, J., and Foley, J.

DONLIN, J.   Gerald Mayer commenced a divorce action against Nancy in Rusk County on January 5, 1978. In his complaint he sought custody of Nash, the parties' minor child.   The court issued a temporary order awarding custody of Nash to Gerald on May 10, 1970.   The order was to be effective until further order of the court.   At the time the order was issued, Nash lived in California with his mother.

Nancy and Gerald had been married on December 23, 1972.   Nash was born on January 30, 1976.   The family lived together in Rusk County until December 12, 1977, when Nancy and Nash went to California.   They allegedly are living with Nancy's mother in California.

The parties jointly own a home and personal property in Rusk County, Wisconsin.   The allegations and admissions of the pleadings establish that Gerald resided at the parties' home in Rusk County when the action was commenced.   After this appeal was taken, counsel for Nancy filed an affidavit averring that Gerald has been living and working in Minnesota since February or March, 1978.

On June 19, 1978, Nancy moved the trial court to stay the child custody portion of the divorce proceeding so as to permit the child custody matter to be determined in California.   In her motion, Nancy alleged Rusk County was an inconvenient forum and that the California court was "a more appropriate forum" within the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA).[1]   The court denied Nancy's motion to stay

---

[1] "All proceedings relating to the custody of children shall comply with the requirements of ch. 822." Sections 247.015, 48.027, Stats.

Wisconsin has enacted the UCCJA as ch. 822, Stats. California has also enacted the UCCJA. *See* West's Ann. Civ. Code §§5150–74.

the proceeding on June 19, 1978. It ruled that Rusk County was not an "inconvenient forum." Nancy appeals from that order.[2]

The following issues are presented on appeal:

1. Does the Rusk County Circuit Court have "home state" jurisdiction under sec. 822.03(1)(a), Stats. [UCCJA §3(a)(1)], to make a child custody determination in this case?
2. Was Nancy's motion for a stay and change of forum untimely under sec. 822.07(1), Stats. [UCCJA §7(a)]?
3. Under the criteria for deciding inconvenient forum motions in sec. 822.07(3), Stats. [UCCJA §7(c)], did the trial court abuse its discretion in denying the motion by

   (a) proceeding upon a mistaken view of the law as to California's status as a "home state,"
   (b) failing to consider the relevant criteria, or
   (c) considering improper criteria?

4. Should a guardian *ad litem* have been appointed to represent Nash's interest in these proceedings?

## WISCONSIN'S "HOME STATE" JURISDICTION

Section 822.03, Stats., sets forth several bases for establishing jurisdiction to make an initial child custody

---

[2] The trial court denied Nancy's motion before August 1, 1978. This was the date for implementation of new appellate practice statutes and rules. Section 138, ch. 187, Laws of 1977. Thus §§808.03, 808.04, and 809.50, Stats. (1977) do not control the present appeal. Section 817.33(3)(g), Stats. (1975), provides the controlling law on the appealability of the order here.

Until August 1, 1978, orders denying "motion[s] for stay of proceeding under s. 801.63" were appealable as a matter of right. Section 822.07, Stats., merely tailors the criteria and procedures of §801.63, Stats., to the special circumstances involved in exercising child custody jurisdiction. Manifestly, the statutory language encompasses denials of motions for stay or proceeding under §822.07. The trial court's order of June 19, 1978, is appealable under §817.33(3)(g), Stats. (1975).

decree.[3] If the court has jurisdiction, it must not exercise its jurisdiction if another custody proceeding is pending when the petition is filed.[4] The Rusk County action is for an initial decree and is the only pending custody proceeding. The Rusk County Circuit Court determined that it had "home state" jurisdiction under sec. 822.03(1)(a), Stats.[5]

---

[3] Section 822.03, Stats. [UCCJA §3] provides in part:

JURISDICTION. (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

. . . .

(d) . . . another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

Under §822.02(5), Stats., [UCCJA §2(5)] "home state" means "the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least 6 consecutive months. . . ."

*Compare* "initial decree" *with* "modification decree." Sections 822.02(6) *with* 822.02(7) [*and*] 822.14, Stats. [UCCJA §§2(6), 2(7), 14].

[4] Section 822.06, Stats. [UCCJA §6]. *But see* §822.03(1)(c), Stats. [UCCJA §3(a)(3)].

[5] Jurisdiction over the parts of Gerald's divorce action other than custody is not at issue on this appeal. *See* §§247.01, 247.05, 247.055, 247.057, 247.06, 247.062, Stats. (1975). *See also* §247.01, 247.05, 801.05(11), Stats. (1977).

Wisconsin courts have "home state" jurisdiction to make an initial custody decree for up to six months after a child has moved from Wisconsin, provided that two conditions are met. First, within the six months before the custody proceeding was commenced, the child and at least one parent must have lived in Wisconsin for six consecutive months.[6] Second, a parent must continue to live in Wisconsin.[7]

On appeal, Nancy concedes that the Rusk County Circuit Court had subject matter jurisdiction when Gerald's action was commenced on January 5, 1978. However, she argues that Wisconsin courts lost "home state" jurisdiction when Gerald began living and working in Minnesota in February or March, 1978. This is based upon an affidavit filed by Nancy's attorney over a month after the notice of appeal was filed.

Even if this allegation were true, it would not deprive the Wisconsin court of "home state" jurisdiction under sec. 822.03(1)(a) Stats.[8] The jurisdictional requirements must be met only "at the time of the commencement of the proceeding." The Rusk County court had "home state" jurisdiction on January 5, 1978, and still has subject matter jurisdiction.[9]

---

Even if a Wisconsin court declines to exercise jurisdiction of the custody portion of a divorce action, it may retain jurisdiction of the status or "personal claims" portions of the action. Section 822.07(6), Stats. [UCCJA §7(f)].

[6] Sections 822.03(1)(a), 822.02(5), Stats. [UCCJA §§3(a)(1), 2(5)].

[7] Section 822.03(1)(a), Stats. [UCCJA §3(a)(1)].

[8] UCCJA §3(a)(1).

[9] Gerald claims that this challenge to the court's subject matter jurisdiction is not timely. His argument is without merit. A court may dismiss an action at any time it appears that it lacks jurisdiction of a subject matter. Sections 802.06(8)(c), 801.04, Stats. *See e.g., Wisconsin's Enviromental Decade v. PSC*, 84 Wis. 2d 504, 267 N.W.2d 609 (1978).

The fact of Gerald's residence in Minnesota may weaken Nash's ties to Wisconsin. It may reduce the availability, in Wisconsin, of evidence relevant to the custody determination. The closeness of Nash's ties to Wisconsin and the availability of evidence in this state are among the factors to be considered in deciding inconvenient forum motions.[10]

## TIMELINESS OF NANCY'S MOTION

Gerald argues that Nancy's inconvenient forum motion was not timely. He cites sec. 801.63, Stats. Nancy argues that sec. 822.07, Stats., controls.

Section 822.07, Stats., provides that "at any time before making a decree" the court may make a finding that it is an inconvenient forum and refuse to exercise its jurisdiction under UCCJA. This finding may be made on the motion of any party, a guardian *ad litem,* or the court. Section 801.63, Stats., is the *forum non conveniens* provision generally applicable in civil actions. It requires inconvenient forum motions to be made with or prior to the answer. Nancy's motion was made after service of her answer.

Where two statutes deal with the same subject matter and could lead to different results, the more specific statute controls.[11] Thus, Nancy's motion was timely if made before a "decree" was issued. The question is whether a temporary order pursuant to sec. 247.23, Stats., is a "decree."

A decree is a "custody determination contained in a judicial decree or order made in a custody proceeding . . . ."[12] A court or a family court commissioner

---

[10] Section 822.07(3)(b) and (c) [UCCJA §7(c)(2) and (3)].

[11] *E.g., Schlosser v. Allis-Chalmers Corp.,* 65 Wis.2d 153, 222 N.W.2d 156 (1974).

[12] Section 822.02(4), Stats. [UCCJA §2(4)].

may make temporary orders concerning custody of minor children "[e]xcept as provided in ch. 822."[13]

To render a "decree" under the UCCJA, the court must have both subject matter and personal jurisdiction.[14] Even if a court has jurisdiction, a decree is not binding on any party who is not given an opportunity to be heard.[15] The record discloses that neither Nancy nor her attorney of record was served with Gerald's notice of motion and motion for temporary order.[16] Nancy did not have any opportunity to be heard on the temporary order. The temporary order, void as to Nancy, was not a "decree" under the UCCJA. Therefore Nancy's motion under sec. 822.07, Stats.,[17] was timely.

## INCONVENIENT FORUM DETERMINATION

The Rusk County court had "home state" jurisdiction. Even so, under sec. 822.07, Stats., it could be an "inconvenient forum" and the court of another state could be a "more appropriate forum" to exercise child custody jurisdiction.[18] The court must exercise its discretion in

---

[13] Section 247.23(1), Stats.

[14] Sections 822.03, 822.04, Stats. [UCCJA §§3, 4].

[15] Section 822.12, Stats. [UCCJA §12]. *See also* §§801.11, 822.04, 822.05, Stats. [UCCJA §§4, 5].

[16] Gerald contends that his affidavit of mailing of his notice of motion and motion for temporary order was legally sufficient to give Nancy notice under the UCCJA. The notice was addressed to an Orange County legal aid attorney in California. The record contains no notice of retainer by this or any other attorney on behalf of Nancy. However, Nancy's answer, submitted before the notice was mailed, was filed by the Wausau office of Wisconsin Judicare, Inc.

Proper service of the notice of motion for temporary custody order could have been made either upon Nancy or upon the attorney shown on her answer.

[17] UCCJA §7.

[18] Section 822.07, Stats. [UCCJA §7] provides in part:

INCONVENIENT FORUM. (1) A court which has jurisdiction

deciding motions for stays to allow changes of forum.[19] Appellate review of these decisions is limited to whether the trial court abused its discretion.[20]

"The proper exercise of discretion contemplates an informed determination reached by the demonstrated ap-

under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

. . . .

(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(a) If another state is or recently was the child's home state;

(b) If another state has a closer connection with the child and family or with the child and one or more of the contestants;

(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(d) If the parties have agreed on another forum which is no less appropriate; and

(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in s. 822.01.

(4) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

[19] As under the *forum non conveniens* statute generally applicable in civil actions, the decision is committed to the sound exercise of the trial court's discretion. *Compare* §822.07, Stats. [UCCJA §7] *with* §801.63, Stats. *See U. I. P. Corp. v. Lawyers Title Ins. Corp.*, 65 Wis.2d 377, 222 N.W.2d 638 (1974); *Littmann v. Littmann*, 57 Wis.2d 238, 203 N.W.2d 901 (1973). *See also Clark v. Superior Court*, 73 Cal. App.3d 298, 310, 140 Cal. Rptr. 709, 716 (1977).

[20] *Id.*

plication of reason to facts and circumstances appearing in the record."[21] Failure to consider relevant factors constitutes an abuse of discretion.[22] Consideration of an improper factor may be an abuse of discretion. A mistaken view of the law also exceeds the limits of discretion.[23]

A discretionary decision may be sustained even without findings of fact and conclusions of law. If the record contains facts which would support the trial court's discretionary act, it will be affirmed.[24] However, an appellate court will resolve factual matters only when they are undisputed or susceptible to proof by judicial notice.[25]

The court made no formal findings of fact or conclusions of law in this case. The only evidence was the admissions in the pleadings and Nancy's declaration containing the information required by sec. 822.09, Stats. The trial court concluded that Wisconsin was the "home state" of the child. It further concluded that Nancy improperly removed the child to California.

## STATUS OF CALIFORNIA AS "HOME STATE"

Section 822.07(3), Stats.,[26] lists five factors to be considered in deciding inconvenient forum motions. The first of these factors is whether California "is or recently was the child's home state."[27] Nancy contends that

---

[21] *D. H. v. State*, 76 Wis.2d 286, 303, 251 N.W.2d 196, 205 (1977).

[22] *U. I. P. Corp., supra* note 19.

[23] *First Wis. Nat. Bank v. KSW Investments, Inc.*, 71 Wis.2d 359, 238 N.W.2d 123 (1976).

[24] *Maier Const., Inc. v. Ryan*, 81 Wis.2d 463, 260 N.W.2d 700 (1978).

[25] *Afram v. Balfour, Maclaine, Inc.*, 63 Wis.2d 702, 218 N.W.2d 288 (1974).

[26] UCCJA §7(c), quoted *supra* note 18.

[27] Section 822.07(3)(a), Stats. [UCCJA §7(c)(1)].

California became Nash's "home state" six months after she and Nash began living there. If so, California was the home state on the date Nancy's inconvenient forum motion was heard and decided. She argues that such "home state" status is a factor favoring a California forum.

Gerald contends that Wisconsin retains its "home state" status for the duration of these proceedings, because he commenced this action within six months of the time when Wisconsin still was Nash's home state. He argues that Wisconsin's "home state" status should favor a Wisconsin forum.

The "home state" factor in sec. 822.07, Stats., should be construed in light of the purpose of "home state" jurisdiction under sec. 822.03 (1) (a). The "home state" concept of residence for six consecutive months is designed to provide a "definite and certain test" to readily ascertain initial jurisdiction.[28] The Commissioners' Note to sec. 822.03 describes the rationale for continuing "home state" status even after the child departs for another state as follows:[29]

The main objective is to protect a parent who has been left by his spouse taking the child along. The provision makes clear that the stay-at-home parent, if he acts promptly, may start proceedings in his own state if he desires, without the necessity of attempting to base jurisdiction on [sec. 822.03 (1) (b)]. . . .

The stay-at-home parents' "home state" advantage is not absolute. Under the significant-connection and substantial-evidence of sec. 822.03 (1) (b), Stats., Nancy might have been able to invoke California jurisdiction, depending upon the strength of family ties to California

---

[28] Commissioners' Note to UCCJA §3 [§822.03, Stats.], *reprinted in* 9 U.L.A. at 107 (West, 1973.)

[29] *Id.*

and the applicability of the "clean hands" doctrine.[30] However, stay-at-home parents lose the option of invoking "home state" jurisdiction if they fail to do so within six months of the child's departure. In that event, a state like California would then qualify as the home state under sec. 822.03 (1) (a).[31]

In addition, other factors listed in sec. 822.07, Stats., give effect to the passage of time. With the passage of time, Nash's ties to California become stronger and the availability of substantial evidence in California increases. The six-month test, said to be based on a reasonable assumption of fact,[32] was never intended to tip the balance of factors toward a new forum. The test was intended to provide a jurisdictional minimum. The fact that Nash had lived in California for six months at the time of the hearing on Nancy's motion was relevant only insofar as it bears on the closeness of Nash's California ties and availability of evidence in California.[33]

[30] See Commissioners' Note to UCCJA §3(a)(2) [§822.03(1) (b)] regarding application of the significant-connection and substantial-evidence test, *reprinted in* 9 U.L.A. at 107–08 (West, 1973).

[31] Provided that the other requirements of sec. 822.02(5), Stats. [UCCJA §2(5)] were met.

[32] Commissioners' Note, *supra* note 28.

[33] *See Williams v. Zacher*, 35 Or. App. 129, 137, 581 P.2d 91, 96 (1978).

Nancy claims that *Williams* supports her contention that her residence in California with Nash for six consecutive months as of the date her motion was heard is a relevant factor under §822.07(3)(a), Stats. [UCCJA §7(c)(1)]. *Williams* does indicate that the passage of time on appeal may affect the determinations of inconvenient and more appropriate forums. *Williams* does not hold the passage of six months by itself has any impact on inconvenient appropriate forum determinations. As noted in the text, the passage of time tends to increase the significance of the factors listed in §822.07(3)(b) and (c) [UCCJA §7(c)(2) and (3)].

The trial court determined that only Wisconsin was or could be the "home state." For purposes of the initial jurisdiction determination, this was true.[34] However, California apparently was a "home state" under the definition in sec. 822.02(5), Stats.[35] California may have been a "home state" for purposes of the "home state" factor in inconvenient forum determinations. Under the circumstances here, the "home state" factor is overshadowed by the other factors listed in sec. 822.07(3), Stats. There was no abuse of discretion in not considering California as a "home state."

## FAILURE TO CONSIDER RELEVANT CRITERIA

The record contains no indication that the court considered the criteria of either sec. 822.07(3)(b) or (c), Stats.,[36] in exercising its discretion regarding Nancy's motion. These factors are relevant to determination of the "more appropriate forum" and "inconvenient forum." Failure to consider these factors was an abuse of discretion.

Nancy urges this court to find that California has a "closer connection" and "more readily available" substantial evidence as a matter of law. She would then have

---

Nancy also cites *Gaines v. Gaines*, 566 S.W.2d 814 (Ky. App. 1978). Kentucky has not adopted the UCCJA. 9 U.L.A. (West Supp., 1979). The relevant Kentucky child jurisdiction statute is similar to §822.03, Stats. [UCCJA §3], with a significant difference. The Kentucky "home state" jurisdiction requires Kentucky to be the child's home state when an action is commenced. It does not extend "home state" status for six months after a child departs from Kentucky. See §822.03(1)(a), Stats. [UCCJA §3(a)(1)].

[34] Section 822.03(1)(a), Stats. [UCCJA §3(a)(1)], quoted *supra* note 3.

[35] UCCJA §2(5), quoted *supra* note 3.

[36] UCCJA §§7(c)(2) and (3), [§822.07(3)(b) and (c)] quoted *supra* note 18.

this court determine that the action in Wisconsin must be stayed.

The mere fact that the child has been in California with his mother for a substantial period of time does not in itself establish that substantial evidence is available in California. It may well establish that California has "a closer connection" as a matter of law. It is not, however, the function of an appellate court to make these findings. The court must also have information available to it as to the plans of the parties and the nature of the issues which may be contested on the merits. We decline to find, on the basis of the record before us, that substantial evidence would be more readily available in California.[37]

### CONSIDERATION OF IMPROPER CRITERIA

The trial court was concerned that Nancy had taken the child to California without permission. Even if the record supported this finding, it cannot be properly considered in the exercise of discretion under sec. 822.07, Stats.[38]

Gerald argues this is a proper factor under secs. 822.08 and 822.01(1)(e), Stats.[39] Under sec. 822.08, a court may decline to exercise jurisdiction if a petitioner does not have "clean hands." This applies only to "wrongful" removal of a child or "similar reprehensible conduct." The record does not support a finding of "wrongful" removal or "similar reprehensible conduct" by Nancy.

[37] Attempts have been made to supplement the record on appeal. We consider only the relevant matters which were before the trial court.

[38] UCCJA §7, quoted *supra* note 18.

[39] UCCJA §§8, 1(a)(5).

Even if there were a showing of "reprehensible conduct" or removal solely to obtain custody, this factor is not by itself controlling.[40] The paramount concern under the act must be for the best interests of the child. On the record before us, we find nothing to establish that Nancy did not have "clean hands." The trial court therefore improperly considered Nancy's unilateral removal from Wisconsin. It thereby abused its discretion.

## APPOINTMENT OF GUARDIAN *AD LITEM*

In Wisconsin the court is required to appoint a guardian *ad litem* to represent children "in any action . . . affecting marriage, when the court has reason for special concern as to the future welfare of the minor children."[41] This is "an action affecting marriage."[42] Should the court have had "special concern" for Nash?

In answering this question we must look to the nature of the interest affected. If the issues are only peripherally related to the child's welfare, the appointment of a guardian *ad litem* is discretionary. Where the child's welfare is directly in issue, the appointment is mandatory.[43]

Even if a stay is granted to transfer the proceedings from Wisconsin to California, there is reason for "special concern" as to Nash's welfare. The child is the most

[40] *See generally Moore v. Moore*, 24 Or. App. 673, 546 P.2d 1104 (1976); *Brooks v. Brooks*, 20 Or. App. 43, 530 P.2d 547 (1975).

[41] Section 247.045, Stats. (1975). *See also* §247.045, Stats. (1977) (effective for actions commenced after February 1, 1978). The new statute requires appointment of guardians *ad litem* in cases "where the custody . . . is contested."

[42] Section 247.03(1)(e), Stats. (1975); Section 247.02(1)(e), Stats. (1977).

[43] *Bahr v. Galonski*, 80 Wis.2d 72, 257 N.W.2d 869 (1977).

important party in these proceedings regarding his custody. The child's best interest is to be paramount in exercising jurisdiction and selecting forums under the UCCJA.[44] A guardian *ad litem* should have been appointed.

*By the Court.*—Temporary order vacated as to custody and visitation; order determining convenient forum vacated and remanded for further proceedings not inconsistent herewith.

---

[44] *See Marriage of Settle,* 276 Or. 759, 556 P.2d 962 (1976). Both parties relied on *Settle* to support their arguments about relevant factors to be considered under §822.07(3) [UCCJA §7 (c)]. *Settle* held that the "best interests of the children require a hearing at some time on the full facts, [and] that in this case the present proceeding is the only opportunity which is likely ever to exist." 566 P.2d at 968. The court therefore reinstated the trial court's custody determination on the merits. Under these circumstances, *Settle* can only be considered authority for the proposition that the children's best interests are paramount in UCCJA determinations.