Carl R. B. COLBY, Plaintiff-Respondent,

v.

Sheila COLBY, Defendant-Appellant,

William T. HENDERSON, guardian *ad litem,* Petitioner.

Supreme Court

*No. 79–1856. Argued April 27, 1981.—Decided June 2, 1981.*

(Also reported in 306 N.W.2d 57.)

For the petitioner there were briefs by *William T. Henderson* and oral argument by *Mr. Henderson* and *Frank X. Kinast,* both of Beloit.

For the appellant there was a brief by *Karen D. Julian* and *Wadsack & Julian* of Madison, and oral argument by *Ms. Julian.*

STEINMETZ, J.  This case comes before the court on a petition to review a decision of the court of appeals which reversed the trial court. We reverse the decision of the court of appeals. At issue is an application of ch. 822, Stats., the Uniform Child Custody Jurisdiction Act.

The plaintiff-respondent, Carl R. B. Colby, married the defendant-appellant, Sheila Colby, on December 1, 1974. The marriage took place in Clinton, Wisconsin, in Rock county.

In April, 1975, the couple moved to Phoenix, Arizona. There their only child, Rachel Colby, was born on April 19, 1976. At the time of Rachel's birth, Carl and Sheila Colby had already informally separated, Carl having returned to Wisconsin in December, 1975. In January, 1977, the Colbys attempted a reconciliation and Sheila and the child rejoined Carl in Clinton, Wisconsin. They lived there together until April 1, 1977, when they moved to Loves Park, Illinois, about 25 miles south of Clinton. Two months later, on May 30, 1977, Carl commenced a divorce action against Sheila in Rock county, Wisconsin. About three weeks later Sheila and the child returned to Phoenix and Carl returned to Clinton.

The time spent by the Colbys in Illinois was short in duration. The plaintiff alleged in his complaint that he was a Wisconsin resident and this was admitted in the defendant's answer and counterclaim. The trial court ruled that the Colbys' residency in Illinois was temporary and did not affect Carl Colby's Wisconsin residency for purposes of jurisdiction. Sheila Colby did not challenge the jurisdiction of the Wisconsin court due to residency before this court or before the court of appeals.

The case is a review of the Wisconsin divorce action commenced on May 30, 1977. In this action, the defend-

ant answered the complaint denying that the plaintiff, Carl, is a fit and proper person to have custody of the minor child. In her counterclaim, Sheila's plea is that she is a fit and proper person to have custody of the minor child and *inter alia* prayed for judgment granting her custody of the minor child of the parties. On June 21, 1979, the counterclaim of Sheila was withdrawn by her attorney. However, the Arizona court had already dismissed Sheila's action in that state on February 2, 1979.

On March 28, 1978, Sheila Colby commenced a divorce action against Carl in an Arizona court. Both the Wisconsin and Arizona actions sought a judgment of divorce and both sought custody for the respective plaintiffs.

In December, 1977, the Wisconsin court appointed Attorney William T. Henderson as guardian *ad litem* for the child, Rachel Colby, pursuant to sec. 767.045, Stats.[1]

Attorney Henderson wrote to the Arizona court informing that court of the Wisconsin proceedings. Such notice is provided for in sec. 822.07(4), Stats.[2] While

---

[1] "767.045 **Guardian ad litem for minor children.** In any action affecting the family in which the court has reason for special concern as to the future welfare of the minor children, in which the custody of such children is contested, and in any action in which paternity is contested under s. 891.39, the court shall appoint an attorney admitted to practice in this state as guardian ad litem to represent the interests of children as to custody, support and visitation. The guardian ad litem shall be an advocate for the best interests of the child or children and consider the factors under s. 767.24. If a guardian ad litem is appointed, the court shall direct either or both parties to pay the fee of the guardian ad litem, the amount of which fee shall be approved by the court. If either or both parties are unable to pay, the court, in its discretion, may direct that the fee of the guardian ad litem, in whole or in part, be paid by the county of venue, and may direct either party to reimburse the county, in whole or in part, for the payment."

[2] Sec. 822.07(4), Stats. provides:

"(4) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and

the statute states the court may communicate with another state's court in determining jurisdiction, and here the guardian *ad litem* wrote to the Arizona court, the statutory purpose was fulfilled in that the Arizona court was put on notice of the Wisconsin action.

In cases where this communication between courts is determined advisable or necessary it would be better if the court through the judge would make the contact. The guardian *ad litem* represents the best interest of the child and therefore does not necessarily represent the interests of both parties at issue. Attorney Henderson, as the guardian *ad litem* in this case, fortuitously acted and as a result, the Arizona judge wrote him. The petition of Sheila to the Arizona court had not contained an allegation that a divorce action was already pending in Wisconsin.

The Arizona judge suggested Carl obtain counsel in that state which Carl did. His Arizona attorney filed a "Motion to Dismiss and Motion to Abate, or in the alternative stay proceedings" on the grounds that the same dispute was pending in a Wisconsin court.

Sheila's Arizona attorney filed a legal memorandum in that court arguing the Arizona court should retain custody proceedings under the Uniform Child Custody Jurisdiction Act.[3] Her counsel argued all aspects of the jurisdictional issues for determining custody of the child, since custody was really the only issue between the parties in both courts.

exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties."

[3] The Uniform Child Custody Jurisdiction Act was adopted by the Wisconsin legislature in 1975, and became effective as ch. 822, Stats., in May, 1976. The same act was passed by the Arizona legislature and became effective in that state in September, 1978. The Arizona statutes on child custody jurisdiction which were in force before September, 1978, were very similar to the Uniform Act.

After being fully advised, the Arizona judge presiding in the superior court of Maricopa county issued an order on February 2, 1979, which granted Carl's motion to dismiss as to the request for all relief except to grant a decree of dissolution of marriage and as to that relief, the judge granted a stay until such time as the matter is determined in the state of Wisconsin. He also ordered that if the matter is not determined in the state of Wisconsin within a reasonable time, that court would permit Sheila to request that the stay be lifted so she could proceed with the action for dissolution. However, in the event a decree of dissolution of divorce was granted in Wisconsin in a reasonable time, the Arizona action should abate.[4]

In April, 1979, Sheila moved the Wisconsin court to dismiss the child custody dispute on the grounds that the Wisconsin court did not have jurisdiction under ch. 822, Stats. The court agreed to hear arguments on this issue at a later date. On June 21, 1979, the court granted Carl a divorce and reserved ruling on the child custody issue. On July 3, 1979, after hearing arguments, the court ruled that it had jurisdiction and that it should ex-

---

[4] February 2, 1979, order of the superior court of Maricopa county, Arizona:

"IT IS ORDERED granting the motion to dismiss as to the request for all relief except the relief to grant a decree of dissolution of the marriage.

"As to the issue of the request for relief decreeing a dissolution of the marriage,

"FURTHER ORDERED granting a stay until such time as the matter is determined in the State of Wisconsin; if the matter is not determined within the State of Wisconsin within a reasonable time, the court will entertain a motion to permit the petitioner in this action to request that the stay be lifted so that she can proceed with action for dissolution. In the event a decree of dissolution or divorce is granted in the State of Wisconsin within said reasonable time, this action shall abate."

ercise that jurisdiction because it was a convenient forum. In reality, the Wisconsin court was the only forum to determine custody, since the Arizona court had already dismissed the custody relief of Sheila's petition and had stayed only the dissolution proceedings deferring that also to the Wisconsin court.

The following September, 1979, the Wisconsin court granted custody of Rachel to her father, Carl Colby.

Sheila Colby appealed. The court of appeals in an unpublished decision reversed the trial court on the grounds that the Wisconsin trial court did not have jurisdiction over the child custody dispute under ch. 822, Stats. We reverse the court of appeals.

Sec. 822.03(1), Stats., specifies the conditions under which a court of this state has jurisdiction to make a child custody determination.[5] It is agreed on this re-

[5] 822.03 **Jurisdiction.** (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"(c) The child is physically present in this state, and the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

"(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with par. (a), (b) or (c), or another state has declined to exercise jurisdiction on

view that jurisdiction does not attach under pars. (a), (b) or (c) of this statute. Par. (a) does not apply because Wisconsin is not the home state of the child as defined in sec. 822.02(5).⁶ Par. (b) does not apply since the child does not have a significant connection with the state of Wisconsin. Par. (c) is obviously inapplicable. At no time in the proceedings below was it shown or alleged that the child was abandoned or that there was an emergency situation. Jurisdiction in the Wisconsin court depends on par. (d).

According to sec. 822.03(1)(d), Stats., a court of this state has jurisdiction to make a child custody determination if "another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction." In the present case a divorce and custody action was commenced in Arizona ten months after the same action was commenced in Wisconsin. Ten months after commencement of the Arizona action the court of that state, with knowledge of the Uniform Act and after hearing from both sides to the dispute, dismissed the child custody action. The Arizona court did not state its reasons for dismissing the action with an ideal degree of specificity. It did not explicitly state that Wisconsin was a more appropriate forum than Arizona for deter-

---

the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction."

⁶ Sec. 822.02(5), Stats., provides:

" 'Home state' means the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period."

mining the custody of the child. Such a finding, however, is implicit in the Arizona court's decision and is the only inference under the circumstances of this case.

The Uniform Act does not state any standards for the determination of the appropriateness of a forum. When the Arizona court considered whether it should exercise jurisdiction, it was faced with the following facts: a divorce and custody suit had been commenced in Wisconsin ten months before suit was commenced in Arizona; Carl Colby, his wife and his child had been living in or near Rock county, Wisconsin, at the time the action was commenced and for several months previous to that time; the father still lived in Wisconsin and all evidence of the care he could provide the child in the future was there; the child custody determination was incidental to the Wisconsin divorce proceeding. Faced with these facts the Arizona court deferred to the Wisconsin court.

Without commenting on what rules in general may describe the appropriateness of a forum, it is clear that in this case the Arizona court believed that the case would more appropriately be tried in Wisconsin and that court's reasons for so believing were sufficient under sec. 822.03(1)(d), Stats.

If we had any doubts about the reasoning behind the Arizona court's action, they would be dispelled by sec. 822.01, Stats. That section states, in part:

"822.01 **Purposes; construction of provisions.** (1) The general purposes of this chapter are to:

"(a) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

"(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

"...

"(d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

"...

"(f) Avoid relitigation of custody decisions of other states in this state insofar as feasible;

"...

"(2) This chapter shall be construed to promote the general purposes stated in this section."

The Arizona court dismissed the divorce and child custody action which is the subject of this case and had therefore decided the best interests of the child were served through the Wisconsin court. The Wisconsin court, in reliance on that dismissal, proceeded with the action, heard extensive evidence, invited additional evidence to be presented from Arizona and made a final determination. To invalidate that determination now because the Arizona court could have been more explicit in giving its reasons for dismissal would run contrary to the fundamental purpose of the Child Custody Jurisdiction Act. That act was intended to avoid conflict with courts of other states, to discourage continuing controversy and relitigation and to promote cooperation with the courts of other states. To invalidate the Wisconsin court's action would require a trial *de novo*, after the parties have already gone to the great expense and inconvenience of litigating one entire proceeding in Wisconsin and part of one in Arizona. If this court invalidates the Wisconsin court's jurisdiction, new suits may be commenced in Arizona and in Wisconsin and the jurisdictional battle would be fought all over again, followed by a trial on the merits in one state or another.

Once the Arizona court declined to exercise jurisdiction, the way was clear for the courts of Wisconsin to exercise jurisdiction through sec. 822.03(1)(d), Stats.

That section states that if a court declines to exercise jurisdiction on the ground that another state's court is a more appropriate forum, that other state may exercise jurisdiction if it is in the best interest of the child that it do so. It is clear from the record that the trial court considered the exercise of Wisconsin jurisdiction to be in the best interest of the child and the evidence supports that view. Further delay was avoided in determining custody and that is in the best interest of the child, and in addition, the Arizona court had already decided jurisdiction in Wisconsin was in the child's best interest by dismissing the custody relief sought in that state.

The appellant's final objection to the trial court proceeding is that even if jurisdiction were available through sec. 822.03, Stats., the court abused its discretion in refusing to decline jurisdiction under sec. 822.07. This section reads in part:

"822.07 **Inconvenient forum.** (1) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum."

At the hearing on July 3, 1979, the defendant moved that the court decline jurisdiction on the basis of this statute. The court refused to decline jurisdiction. According to the statute, the court *"may"* decline jurisdiction "if it finds that it is an inconvenient forum . . . and that a court of another state is a more appropriate forum." This statute leaves such a determination to the discretion of the trial court. On appeal, the discretionary order of a trial court will be affirmed if there appears any reasonable basis for the trial court's decision. *Littmann v. Littmann,* 57 Wis.2d 238, 203 N.W.2d 901 (1973). Furthermore, the party who alleges that a lower

court abused its discretion has the burden of showing an abuse of discretion and this court will not reverse unless abuse is clearly shown. *Fanshaw v. Medical Protective Asso.*, 52 Wis.2d 234, 240, 190 N.W.2d 155 (1971) ; *Shier v. Freedman*, 49 Wis.2d 41, 181 N.W.2d 400 (1970).

In the present case, the trial court, after hearing the arguments of counsel, refused to decline jurisdiction. The record shows that the trial court had a reasonable basis for this decision and the appellant has not shown otherwise. We uphold the decision of the trial court.

We conclude that the trial court had jurisdiction over the child custody dispute and did not abuse its discretion in refusing to decline such jurisdiction.

*By the Court.*—The decision of the court of appeals is reversed.