SCHWARTZ, Judge.
Zuccaro brought an action in the Dade County Circuit Court for, among other things, the custody of the parties’ two-year-old boy, Andrew. He admitted that he had brought the child into Florida after removing him, without notice, from New York State, where the boy had been living with his mother; and that he had taken this action when Andrew had lived in New York for three days short of six months for the express purpose of preventing New York from becoming the child’s “home state” under Section 61.1306(5), Florida Statutes (1979).[1] Largely because of this conduct, the trial court, pursuant to Section 61.-1316(1),[2] declined to exercise the jurisdiction it concededly possessed over the custody proceeding on the ground that Florida was an “inconvenient forum” and that the issue should more appropriately be considered in New York.[3] Zuccaro appeals but we affirm.
The implementation of a strong public policy against the pernicious and immensely *391 damaging practice of child snatching, as occurred in this case, was one of the primary and underlying reasons for the very existence of the Uniform Child Custody Jurisdiction Act and its adoption in our state. See generally, Kutun and Fox, Closing the Custody Floodgate: Florida Adopts the Uniform Child Custody Jurisdiction Act, 6 Fla.St.U.L.Rev. 409, 410-11, 413-15 (1978); commissioners’ prefatory note to the Uniform Act, 9 U.L.A. 111-114 (1981). Section 61.1304(5), Florida Statutes (1979) expressly states that one of the act’s “general purposes” is to
[d]eter abductions and other unilateral removals of children undertaken to obtain custody awards.
That the order under review vindicates this salutary statutory purpose, is, in our judgment, alone sufficient to demonstrate its propriety. This conclusion is mandated by the terms of the act itself. Under Section 61.1316(3)(e), one of the factors which the court is specifically authorized to consider in determining if jurisdiction should be declined is whether “the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in s. 61.-1304.” See, Wilkerson v. Wilkerson, 404 So.2d 120 (Fla. 4th DCA 1981); Clark v. Clark, 67 A.D.2d 388, 416 N.Y.S.2d 330, 332-33 (1979); Carson v. Carson, 29 Or.App. 861, 565 P.2d 763 (1977); see also, Section 61.1318(1), Florida Statutes (1979) (permitting declining jurisdiction if “the petitioner for an initial decree has wrongfully taken the child from another state”); Wilkerson v. Wilkerson, supra (Beranek, J., specially concurring); Brown v. Tan, 395 So.2d 1249, 1252 (Fla.3d DCA 1981), and cases cited; Costantino v. Costantino, 386 So.2d 1274 (Fla.3d DCA 1980), and cases cited; Both v. Superior Court In & For County of Mohave, 121 Ariz. 381, 590 P.2d 920 (1979); In re Marriage of Ben-Yehoshua, 91 Cal.App.3d 259, 154 Cal.Rptr. 80 (1979); cf. Winkelman v. Moses, 279 N.W.2d 897, 899 (S.D.1979); but see, Mondy v. Mondy, 395 So.2d 193 (Fla. 1st DCA 1981); see generally, Annot.—Validity, Construction, and Application of Uniform Child Custody Jurisdiction Act, 96 A.L.R.3d 968, 995-1002 (1979).
The appellant complains that the trial court did not conduct a full-scale hearing to determine whether declining jurisdiction was in the child’s best interest as provided by Section 61.1316(3).[4] It must be emphasized, however, that the pertinent issue at this stage does not concern the ultimate question of custody itself, but rather “if it is in the interest of the child that another state assume jurisdiction” to decide that question. As the order reflects,[5] from the statements of counsel, the sworn complaint, *392 and the affidavit filed under Section 61.132, the trial judge had more than sufficient information concerning the criteria referred to in Section 61.1316(3) upon which to make a reasoned judgment on that issue. See Mayer v. Mayer, 91 Wis.2d 342, 283 N.W.2d 591, 597 (1979).[6]
Under Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), we would not be authorized to interfere with the trial judge’s discretionary resolution of the matter even if we disagreed with the result. We are not, however, in that position. Since it represents what we consider to be a laudable refusal to reward wrongdoing, and in order to deter future similar misconduct, we affirmatively approve and endorse the decision below.
Affirmed.[7]

. (5) “Home state” means the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent for at least 6 consecutive months or, in the case of a child less than 6 months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period.

. 61.1316 Inconvenient forum.—
(1) A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

. In its entirety the order provides as follows:
1.The minor child of the parties, ANDREW DOMINIC ZUCCARO, was born March 13, 1979 in New Hartford, New York, and resided from March 13, 1979, until August 31, 1979, at Route 12B, Deansboro, New York, with both parties.
2. From August 31, 1979 until December 1, 1979, Andrew resided with both parties at 16901 S.W. 87th Court, Miami, Dade County, Florida.
3. From December 1, 1979, until October 25, 1980, Andrew resided with the parties at 9781 Martinique Drive, Miami, Dade County, Florida.
4. From October 25, 1980, until April 22, 1981, Andrew resided with his mother, the Respondent, in the state of New York.
5. On April 22, 1981, the Petitioner removed the child Andrew from the State of New York without notice to the Respondent for the express purpose of preventing the child from acquiring six months of residence in New York with his mother, and to prevent New York from acquiring jurisdiction to determine the custody of the child under the Uniform Child Custody Jurisdiction Act.
6. But for the Petitioner’s wrongful action in removing the child to Florida, the child would have acquired six months residence with his mother in the state of New York.
7. New York has adopted the Uniform Child Custody Jurisdiction Act.
8. Immediately preceding the filing of this action, Andrew lived with his mother, the *391 Respondent, in New York for three days less than six consecutive months.
9. Andrew and his mother, Respondent have a significant connection with the State of New York.
10. The father, Petitioner, has a significant connection with the State of New York.
11. An action for the custody of the child was filed by the mother, Respondent herein, in the Family Court of the State of New York one day after the date of the filing of this action.
12. Exercise of jurisdiction by this Court would contravene one of the purposes of the Uniform Child Custody Jurisdiction Act as set forth in Section 61.1304(5), Florida Statutes, to deter abductions and other unilateral removals of children undertaken to obtain custody awards. New York would be a more appropriate forum to make a custody determination. Therefore, this Court, pursuant to Section 61.1316(3)(e), Florida Statutes, declines to exercise jurisdiction over this matter.

.
(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(a) If another state is or recently was the child’s home state;
(b) If another state has a closer connection with the child and his family or with the child and one or more more of the contestants;
(c) If substantial evidence concerning the child’s present or future care, protection, training, and personal relationships is more readily available in another state;
(d) If the parties have agreed on another forum which is no less appropriate; and
(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in s. 61.1304.

. See n. 3, supra.

. Zuccaro claims that his wife was also guilty of improperly taking Andrew to New York with her in October, 1980. The two acts cannot be equated, however, because only the father’s was — admittedly—“undertaken to obtain [a] custody award,” which is the conduct condemned by Sec. 61.1304(5).

. Because of the stay which has been in effect during the pendency of this appeal, we reduce the time within which any motion for rehearing must be filed to five days from this date.