In the MATTER OF the CUSTODY OF R.J.G. & S.K.G., minors, Johnnie E. GOOCH, Appellant,

v.

Margaret M. GOOCH, Respondent.

Court of Appeals

*No. 81–1241. Submitted on briefs February 2, 1982.—Decided May 25, 1982.*
(Also reported in 321 N.W.2d 354.)

For the appellant there were briefs by *Warren W. Wood* and *Warren W. Wood, Ltd.,* of New Richmond.

For the respondent there was a brief by *Robert R. Gavic* and *Gavic Law Office* of Spring Valley.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J. Johnnie Gooch seeks review of the trial court's judgment in the custody action commenced by his former wife, Margaret. The court exercised jurisdiction under sec. 822.03, Stats., the Uniform Child Custody Jurisdiction Act (UCCJA). Johnnie contends that the Wisconsin court was without subject matter jurisdiction to render a custody award because Wisconsin was not the home state of the children, sec. 822.03(1)(a), Stats; that the trial court did not have jurisdiction under sec. 822.03(1)(b), Stats; and that Pierce County is not an appropriate or convenient forum to litigate a foreign custody decree. Because we conclude that Wisconsin had subject matter jurisdiction, that the statute does not require the Wisconsin court to decline jurisdiction, and that the court did not abuse its discretion by exercising jurisdiction, we affirm.

Johnnie and Margaret Gooch were divorced in Pima County, Arizona, in March, 1979. Custody of their children, ages six and four, was awarded to Margaret by stipulation. The decree permitted either party to take the children out of Arizona for up to two weeks with the consent of the other party and provided that "the petitioner [Margaret] shall not change her residence from the State of Arizona without seeking and receiving [the court's] permission for said move."

Eleven days after the decree and without court permission, Margaret moved to Wisconsin with her new husband and the children. Johnnie sought modification of the decree in the Pima County Superior Court because of Margaret's unauthorized departure, and the court awarded him custody on May 7, 1979. He was unable to enforce the order, however, since neither he nor the Arizona court was informed of the children's whereabouts for fourteen months after their departure.

In May, 1980, Johnnie took the children back to Arizona. Margaret immediately petitioned the Pierce County Circuit Court in Wisconsin to take jurisdiction of the custody dispute. Judge McEwen contacted the Arizona court and was advised that the Arizona court would stay its proceedings pending a Wisconsin decision on the issue. The Wisconsin court took jurisdiction of the custody dispute on October 10, 1980. By order issued November 7, 1980, the Arizona court deferred to Wisconsin jurisdiction on the custody issue. In December, Margaret appeared in Arizona and was found in contempt of court for removing the children from Arizona in 1979 in violation of the Arizona decree. The Wisconsin court held hearings in January, 1981, and awarded custody of the children to Margaret in a judgment issued on June 1, 1981. By stipulation of the parties, the children remain in Arizona with their father pending this appeal.

## SUBJECT MATTER JURISDICTION

Johnnie first challenges the subject matter jurisdiction of the Wisconsin court. Subject matter jurisdiction is governed by sec. 822.03, Stats., [UCCJA § 3(1)(a)],[1] and must be shown at the commencement of proceedings in this state. *Dragoo v. Dragoo*, 99 Wis. 2d 42, 45, 298 N.W.2d 231, 232 (Ct. App. 1980); *Mayer v. Mayer*, 91 Wis. 2d 342, 349, 283 N.W.2d 591, 595 (Ct. App. 1979).

Subject matter jurisdiction exists in the children's home state or in the state that "had been the child[ren]'s home state within 6 months before commencement of the proceeding [when the] . . . child[ren] . . . [are] absent from this state because of . . . removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state." Section 822.03(1)(a), Stats. Home state is defined as "the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as a parent, for at least 6 consecutive months. . . ." Section 822.02(5), Stats. The children had been in Wisconsin for over six months and had left the state only ten days before Margaret commenced this action. Wisconsin had home state jurisdiction.

Wisconsin also had subject matter jurisdiction because the children and their mother had a significant connection with Wisconsin, and substantial evidence was available in Wisconsin "concerning the child[ren]'s present or future care, protection, training, and personal relationships." Section 822.03(1)(b), Stats. Arguably, at the time the motion was made, the children also had a

[1] The UCCJA has been adopted in both Arizona and Wisconsin, as in the majority of the states. The numbers following "822.0" in the Wisconsin statute denote the corresponding section of the uniform law.

significant connection with Arizona where the children had recently been taken by their father. We conclude, however, that the finding of jurisdiction by the Wisconsin court was proper. The children's relationship with their mother was of long duration. Evidence of this relationship was available in Wisconsin as was evidence of the children's progress in school and their peer associations.

Johnnie argues that physical presence is not alone sufficient to confer jurisdiction under secs. 822.03 (1) (a) and (b), citing sec. 822.03 (2), and that home state jurisdiction could not attach in Wisconsin when the children were taken there in violation of the Arizona decree. Johnnie urges that to recognize Wisconsin as the home state because of physical presence for fourteen months is contrary to the UCCJA purpose of deterring kidnapping by parents.

The physical presence of the children in Wisconsin for fourteen months, residing with the custodial parent is, however, more than sufficient to qualify Wisconsin as their home state for purposes of subject matter jurisdiction. *Marriage of Settle*, 556 P.2d 962, 965 (Or. 1976); *see Mayer*, 91 Wis. 2d at 356, 283 N.W.2d at 598.[2] John-

---

[2] In *Mayer v. Mayer*, 91 Wis. 2d 342, 283 N.W.2d 591 (Ct. App. 1979), the child had moved to California with his mother less than a month before the father filed for divorce in Wisconsin, where the parties had lived for at least 2 years. The court held Wisconsin to be the home state for purposes of initial jurisdiction. In *Dragoo v. Dragoo*, 99 Wis. 2d 42, 298 N.W.2d 231 (Ct. App. 1980), Texas was the state of the children's residence and they visited their mother for the summer. Texas was the only state with subject matter jurisdiction because (1) it was their home and was exercising jurisdiction, (2) the children had no significant connection with Wisconsin, and (3) most relevant evidence was in Texas. In *Vorpahl v. Lee*, 99 Wis. 2d 7, 298 N.W.2d 222 (Ct. App. 1980), the home state of the children was plainly not Wisconsin, as they had been here only a short time. None of these cases dealt

nie's second point applies to the appropriateness of the Wisconsin court's exercise of jurisdiction rather than its existence. In *Settle*, the Oregon court found jurisdiction where the children had lived there with their mother and her new husband for eighteen months. Oregon had become the home state. The court recognized that if Indiana, the state of the custody decree, also had jurisdiction, Oregon courts could not exercise their jurisdiction because of UCCJA § 6(1). The court concluded, however, that Indiana no longer had jurisdiction. In *Settle*, the mother had also left the state without the court's permission and without notifying the father of her whereabouts. This did not affect the validity of Oregon's subject matter jurisdiction, although it was a factor in whether Oregon's exercise of jurisdiction was appropriate.

That Margaret changed her residence to Wisconsin without the permission of the Arizona court is a factor to be considered in deciding whether Wisconsin should decline to exercise jurisdiction. It does not change the facts that the children's residence changed, Wisconsin became their home state,[3] and they developed significant connections here.

---

with subject matter jurisdiction over the custody of children physically present in a new state for more than six months.

[3] *Cf. Marriage of Settle*, 556 P.2d 962 (Or. 1976) (Oregon home state 20 months after mother secreted children there); *Howard v. Gish*, 373 A.2d 1280 (Md. App. 1977) (Maryland home state after 11 months although father remained in Georgia and custodial mother had died); *Dowhanik v. Dowhanik*, 602 P.2d 1127 (Or. App. 1979) (children in Oregon with noncustodial father for more than a year); *Williams v. Zacher*, 581 P.2d 91, 96 A.L.R.3d 959 (Oregon home state after more than a year since abduction from Colorado). *See also Graton v. Graton*, 537 P.2d 31 (Ariz. App. 1975), where the court, after stating the rule that the child's domicile follows legal custody, noted a possible exception where children brought into a state illegally have continued for such an extended period of time that, in fact, domicile has attached.

Johnnie asserts that *Vorpahl v. Lee*, 99 Wis. 2d 7, 298 N.W.2d 222 (Ct. App. 1980), is dispositive because in both cases the children were in Wisconsin only because their mothers brought them here in violation of foreign decrees. In *Vorpahl*, the children had been in Wisconsin for two weeks when the mother filed her action. The court refused to consider the connection of the children with Wisconsin because it would not have developed without the abduction of the children from their custodian in Washington. *Id.* at 11–14, 298 N.W.2d at 225–26. In contrast, Margaret was and had always been the custodial parent. Her departure from Arizona, though violative of the decree because she lacked the court's permission and frustrative of the father's visitation privileges, was not an abduction. The children resided in Wisconsin with Margaret for fourteen months forming and continuing relationships that were undeniably significant. Margaret's misconduct, while punishable by contempt of court, does not undermine the substantial connection between herself and her children in Wisconsin or the strength of the children's associations in their Wisconsin home.[4]

---

[4] One court has suggested that any interference with the jealously-guarded relationship between a noncustodial parent and his child is "an act so inconsistent with the best interest of the children as to, per se, raise a strong probability that the [offending party] is unfit to act as a custodial parent." *Entwistle v. Entwistle*, 61 A.D.2d 380, 384–85, 403 N.Y.S.2d 213, 215–16 (1978). We recognize that the desirability of the children's relationship with both parents, the importance of visitation, and the consequent seriousness of the custodial parent's interference with the noncustodial parents' relationship with the children are factors for the trial court to consider when deciding whether to decline to exercise jurisdiction under §§ 822.08(1) and (2), Stats. Sitting as a trial court, we might have given more weight to this factor and may have chosen to decline jurisdiction. We are unable to say, however, that the trial court abused its discretion in reaching a different conclusion.

## EXERCISE OF JURISDICTION

A Wisconsin court "shall not exercise its jurisdiction . . . if at the time of filing of the petition a proceeding concerning the custody of the child was pending in a court of another state . . . unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons." Section 822.06(1), Stats. Arizona had continuing jurisdiction because of the significant connection of the children with Arizona through their father. This concurrent jurisdiction made it necessary for the courts of the two states to confer, as directed in sec. 822.06, to determine which state should exercise jurisdiction. Arizona stayed its proceedings pending a Wisconsin decision on jurisdiction and deferred to the Wisconsin court following the latter's assertion of jurisdiction.

The Wisconsin court shall not modify a custody decree entered in another state unless it determines "that the court which rendered the decree does not now have jurisdiction" or "has declined to assume jurisdiction to modify the decree. . . ." Section 822.14, Stats. The latter event validates Wisconsin exercise of jurisdiction to modify in this case. Although the Wisconsin court expressed its intention to exercise jurisdiction over this action for modification during a stay of Arizona proceedings, it did not exercise its jurisdiction to modify until after the Arizona court had deferred to Wisconsin.

The remaining factors relative to the decision whether to exercise jurisdiction are in the discretion of the court. On appeal, the discretionary order of a trial court will be affirmed if there appears any reasonable basis for a trial court's decision. A party who alleges an abuse of discretion has the burden of showing an abuse of discretion, and this court will not reverse unless abuse is clearly shown. *Colby v. Colby*, 102 Wis. 2d 198, 207–08, 306 N.W.2d 57, 62 (1981).

Johnnie argues that the court is required to decline to exercise jurisdiction because Margaret does not have "clean hands," citing sec. 822.08(2), Stats:

Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody. . . .

Section 822.08 is mandatory only insofar as it applies to the noncustodial petitioner. At the time Margaret moved to Wisconsin with the children, she had custody. The court has discretion to decline jurisdiction "[i]f the petitioner . . . has wrongfully taken the child[ren] from another state or has engaged in similar reprehensible conduct" or "[i]f the petitioner has violated any other provision of a custody decree of another state. . . ." Sections 822.08(1) and (2), Stats. The discretionary provisions are both modified by the phrase "if this is just and proper under the circumstances."

The trial court considered the fact of the mother's unauthorized transportation to Wisconsin and expressly did not condone it. In view of other reasons in favor of exercise and its finding "that she had reasonable grounds for the fear that she expressed for her safety," however, the court decided to exercise jurisdiction in spite of her violation of the decree. We find no abuse of discretion in refusing to decline jurisdiction under sec. 822.08.

The court may also decline to exercise its jurisdiction if it is an inconvenient forum for any of the reasons listed in sec. 822.07, Stats. The court considered each of these factors[5] when exercising its discretion under this

---

[5] Section 822.07(3), Stats., provides these factors:

(a) If another state is or recently was the child's home state;

section. Johnnie argues that exercise of jurisdiction in Wisconsin is contrary to the statutory purpose of deterring kidnapping by parents, sec. 822.01(1)(e), Stats., because it reveals the willingness of Wisconsin to modify a foreign decree after home state status and significant connections are acquired by such conduct. We recognize the court could have declined to exercise jurisdiction for this reason but find no abuse of discretion in its not doing so. The Arizona court had deferred to Wisconsin to decide the modification action, while retaining jurisdiction of proceedings ancillary to the original decree. Margaret had already been found in contempt of court in Arizona for violating the change of residence provision of the decree. Arizona was a better forum in which to deal with this misconduct. The trial court selected Wisconsin as the better forum to review the children's best interests.

The record shows that the trial court had a reasonable basis for this decision. We conclude it had jurisdiction to modify the children's custody and did not abuse its discretion in refusing to decline jurisdiction. *Colby v. Colby*, 102 Wis. 2d 198, 306 N.W.2d 57 (1981).

*By the Court.*—Judgment affirmed.

(b) If another state has a closer connection with the child and family or with the child and one or more of the contestants;

(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(d) If the parties have agreed on another forum which is no less appropriate; and

(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in s. 822.01.