STATE of Wisconsin, Plaintiff-Respondent,†

v.

Patrick JACKSON, Defendant-Appellant.

Court of Appeals

*No. 2006AP1240–CR. Submitted on briefs April 3, 2007.
—Decided May 8, 2007.*

**2007 WI App 145**

(Also reported in 735 N.W.2d 178.)

† Peition to review denied 7/17/07.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Marcella De Peters*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Rebecca Rapp St. John*, assistant attorney general.

Before Fine, Curley and Kessler, JJ.

¶ 1. FINE, J. A jury found Patrick Jackson guilty of being a felon in the unlawful possession of a firearm.

*See* WIS. STAT. § 941.29. The trial court denied his motion for postconviction relief, and Jackson appeals.

¶ 2. Jackson was in a gun store with some friends and was found to have momentarily handled a gun. *See State v. Black*, 2001 WI 31, ¶ 19, 242 Wis. 2d 126, 142, 624 N.W.2d 363, 371 ("felon who handles a firearm for a brief period violates" WIS. STAT. § 941.29). Jackson claims that the trial court erred in not telling the jury that one of the persons in the group, Carlos Williams, was also a convicted felon, and in not receiving into evidence what another member of the group, Natisha Watkins, told Jackson's investigator. Jackson also contends that his trial lawyer gave him ineffective representation by not objecting to what he argues were prejudicial things the prosecutor said in her closing argument.

¶ 3. We agree that the trial court erred in not letting the jury know that Carlos Williams was a convicted felon and conclude, as explained below, that the error was not "harmless." Thus, although we also conclude that the trial court did not erroneously exercise its discretion by not receiving into evidence what Natisha Watkins told the investigator, we reverse. We also believe it important to make it clear that prosecutors, as is the case with all lawyers trying a case, may not express their personal belief as to the merits of their case, as did the prosecutor in this case, who told the jury in her rebuttal summation: "I believe truly that he is guilty."

## I.

¶ 4. In February of 2004, Jackson, Natisha Watkins (also referred to in the proceedings as Natisha

Washington), her cousin Early Watkins, and Carlos Williams went to a gun store in the Village of West Milwaukee where Natisha Watkins tried to buy a gun. One of the store's co-owners did a routine check with the applicable law-enforcement agency to see if Natisha Watkins could lawfully buy a gun in Wisconsin and was told that she could not because she had outstanding warrants. Accordingly, as was the usual practice, the West Milwaukee police were notified. They arrived at the gun store while Natisha Watkins, Jackson, Carlos Williams, and Early Watkins were still there.

¶ 5. West Milwaukee police sergeant Robert Bennett, one of the responding officers, testified that when the police arrived he saw a man whom he later identified as Jackson walk out of the gun store and get into the back seat of a car parked in the store's lot. After first giving Sergeant Bennett several false names, Jackson ultimately gave his real name. When Bennett ran a record-check on Jackson, he discovered that Jackson had been convicted of a felony a decade earlier. Bennett then asked the gun store's co-owner whether Jackson had handled any of the guns in the store. The co-owner replied that Jackson had. By looking through the store's windows from inside his shop, the co-owner identified Jackson, who was being held by the police in the store's parking lot, as the man who had handled the gun.

¶ 6. The officers let Carlos Williams and Early Watkins go without asking them any substantive questions, after a check indicated that neither had any outstanding warrants or had been previously convicted of a felony. As it turned out, however, Carlos Williams did have a prior Illinois felony, which, apparently, no one other than he knew until shortly before the trial started.

¶ 7. Although, as we have seen, there was testimony that Jackson both got into a car's back seat as the officers were arriving, and, also, that he had handled a gun while in the store, there was conflicting testimony by Victor Williams, a part-time worker in the store, and, as we will see, by Early Watkins, and also a conflicting out-of-court statement by Carlos Williams that was received into evidence.

¶ 8. Victor Williams testified that Carlos Williams and not Jackson left the store when the police arrived. Further, he told the jury that he never saw the person who left the store when the police arrived handle a gun. Although, according to Victor Williams, the other three (Natisha Watkins, Early Watkins, and Jackson) began to "filter" out when they saw the police cars, none made it out of the store before running into the police. Victor Williams also testified that Jackson handled a gun in the store.

¶ 9. Early Watkins testified that the four of them walked into the store but that Jackson "left right back out of the store and went and sat in the car." She also testified that Jackson was still in the car when a store employee showed Natisha Watkins and Carlos Williams guns, and that he remained in the car the whole time and was there when the police arrived. She told the jury that Jackson did not touch a gun in the store that day.

¶ 10. Jackson tried to call both Natisha Watkins and Carlos Williams as witnesses to tell the jury, as they had earlier told Cynthia Papka, Jackson's investigator, that Carlos Williams, not Jackson, handled a gun inside the store. Further, Carlos Williams told Papka that although Jackson walked into the store with the group, Jackson soon left, commenting, according to Carlos Williams as recounted in Papka's report, "I have a

feeling I shouldn't be in here. I'm fittin' [*sic*] to go to the car and listen to some music." (Italics in Papka's report not reproduced.)

¶ 11. The trial court found that both Natisha Watkins and Carlos Williams could assert their Fifth Amendment right to not testify and that they were thus "unavailable" under WIS. STAT. RULE 908.04(1)(a) (A witness is "unavailable" if he or she "[i]s exempted by ruling of the judge on the ground of privilege from testifying concerning the subject matter of the declarant's statement."). The trial court also ruled that what Carlos Williams told Papka was against his penal interest and was sufficiently corroborated to permit Papka to testify what Carlos Williams told her. *See* WIS. STAT. RULE 908.045(4) (A hearsay statement of someone who is unavailable as a witness may be received to exculpate an accused in a criminal case if that statement "tended to subject the declarant to civil or criminal liability," and if it is "corroborated."). The trial court did not, however, permit Papka to recount to the jury what Natisha Watkins had told her because the trial court determined that what Natisha Watkins told Papka was not against her penal interest. Jackson claims this was error.

## II.

### A. *Carlos Williams's Illinois felony conviction.*

¶ 12. As we have seen, Jackson contends that the trial court erred in deciding that the jury should not be told that Carlos Williams had been convicted of a felony in Illinois. In essence, Jackson argues that the jury should have been told that because it would explain, according to Jackson, why Carlos Williams seemed, as phrased by one of the prosecutor's questions with which

Sergeant Bennett agreed, "anxious to get out of there," as did, according to Bennett, Natisha Watkins and Early Watkins. Significantly, Jackson also argues that if the jury knew that Carlos Williams had a prior felony conviction, "it would have added additional weight to his statement [that he and not Jackson handled the gun], rather than the jury simply believing that he was trying to get Mr. Jackson off the hook, or as the state suggested [Carlos Williams] left the store because he was not a credible person who is in the habit of evading the police." We agree.

¶ 13. A trial court's decision to receive or exclude evidence is vested in its reasoned discretion. *State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30, 36 (1998). "An appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." *Id.*, 216 Wis. 2d at 780–781, 576 N.W.2d at 36.

¶ 14. Here, the trial court excluded evidence of Carlos Williams's prior felony conviction, a fact that was not disputed, because it determined, after assessing the issue several times during the trial, that, because no one other than Carlos Williams knew that he had been convicted of a felony in Illinois until shortly before the trial, the prior felony would not be significantly relevant to explain his interactions with the police on the day Carlos Williams, Jackson, Natisha Watkins, and Early Watkins were in the gun store. The trial court did not analyze, however, whether Carlos Williams's felony conviction added weight to his contention that he, and not Jackson, handled a gun in the store, although, of

course, the trial court considered that in determining that Carlos Williams had a Fifth Amendment right to not testify and, also, that Carlos Williams's contention about who handled the gun was against his penal interest.

¶ 15. Although defending what the trial court did, the State also argues that if the trial court erred in excluding the evidence, the exclusion was harmless because the jury was ultimately told that Carlos Williams had two prior criminal convictions (without telling the jury that Carlos Williams was a convicted *felon*) so it could therefore assess Carlos Williams's credibility under Wis. Stat. Rule 906.09. Additionally, the State argues in support of its harmless-error contention that, as phrased in its appellate brief, "information of Williams' felony conviction may have caused the jury to discount the hearsay statements of Williams that Jackson introduced during his defense." We disagree.

■

¶ 16. Receipt into evidence under Wis. Stat. Rule 906.09 of a witness's prior convictions in order to permit the fact-finder to assess the witness's credibility is different than using a conviction in connection with some other issue in the case. *State v. Quinsanna D.*, 2002 WI App 318, ¶ 20, 259 Wis. 2d 429, 444, 655 N.W.2d 752, 759; *State v. Ingram*, 204 Wis. 2d 177, 187, 554 N.W.2d 833, 837 (Ct. App. 1996). Thus, as Jackson argues, Carlos Williams's felony conviction gave him a motive to leave the gun store when the police arrived. *See* Wis. Stat. Rule 904.04(2)(a) ("evidence of other crimes" is admissible to prove "motive").

¶ 17. As Jackson also argues, evidence of Carlos Williams's prior felony conviction *enhanced* his out-of-court admission to Papka that he, and not Jackson, handled the gun in the store because it subjected him to

775

being charged with possessing a firearm while a felon. Indeed, this is the very rationale underlying the admission of hearsay statements that are against the declarant's penal interest; the potential consequences of such an admission makes it unlikely that the out-of-court declaration is not true. *See State v. Buelow*, 122 Wis. 2d 465, 477, 363 N.W.2d 255, 262 (Ct. App. 1984) ("The circumstantial guaranty of reliability for the exception against interest is the assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true."). Further, the State, apparently deliberately, left the jury with the false impression that Carlos Williams did not have a felony record when it asked Sergeant Bennett the following question to which Bennett replied, "no": "Did you have any reason to believe that Carlos Williams was a felon or person prohibited for any reason by either a felony conviction or a domestic violence injunction that there was any prohibition in Carlos Williams handling a gun at that time?" Although true to the extent that it reflected Bennett's knowledge in February of 2004 when the West Milwaukee officers went to the gun store and arrested Jackson, it left the jury with the misleading impression that Carlos Williams was not a felon. Additionally, in her closing argument, the prosecutor told the jury: "So *for some reason* Carlos Williams — and this speaks to his character — when he sees police officers feels the need to flee stores [*sic*]." (Emphasis added.) It was equally or even more likely that, as a convicted felon, Carlos Williams did not want to hang around a gun store when the police were there. But, of course, the jury did not know that Carlos Williams was a convicted felon, and the trial court's apparent failure to recognize that Carlos Williams's felony status was a significant fact for

the jury to use in weighing the truthfulness of what Carlos Williams told Papka was a misapplication of the law and, accordingly, an erroneous exercise of discretion.

¶ 18. As noted, the State argues that if we find that the trial court erred in not telling the jury that Carlos Williams was a felon when he was in the gun store, the error was harmless. Before an error may be determined to be harmless, the State must show that it is " 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *State v. Harvey*, 2002 WI 93, ¶ 46, 254 Wis. 2d 442, 465–466, 647 N.W.2d 189, 202 (quoted source omitted). We cannot say on this Record that Carlos Williams's felony status and the extra weight of credibility it gave to what he told Papka might not have persuaded the jury that there was a reasonable doubt of Jackson's guilt.

B. *Out-of-court statement by Natisha Watkins.*

¶ 19. The trial court approved Natisha Watkins's assertion of her Fifth Amendment right not to testify. Jackson's lawyer did not seek to question Natisha Watkins on that issue and did not object to her invocation of that right. *See State v. Harris*, 92 Wis. 2d 836, 844–845, 285 N.W.2d 917, 922 (Ct. App. 1979) ("The trial court has a clear responsibility to make a full record that the witness' fear of incrimination is valid, real and appreciable, and not speculative or merely an imaginary possibility of incriminatory danger. In all cases where witnesses have a valid, real and appreciable right to refuse to testify, courts must favor that right

over the conflicting right to compulsory process.") (footnotes omitted). By letting pass the opportunity for the trial court to fully assess whether Natisha Watkins's assertion of her right against self-incrimination was justified, Jackson waived a contention that the trial court erred, although Jackson's motion for postconviction relief did assert in an undeveloped argument that "[t]he trial court should have made further inquiry concerning why [Natisha Watkins] claimed a right not to testify, and if necessary ordered her to testify." *See* Wis. Stat. Rule 901.03(1)(b) (offer of proof); *State v. Keith*, 216 Wis. 2d 61, 77–78, 573 N.W.2d 888, 896 (Ct. App. 1997) (alleged error in excluding evidence will not be considered on appeal unless there is an offer of proof as to what the evidence would have shown); *Vesely v. Security First Nat'l Bank of Sheboygan Trust Dep't*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985) (courts are not required to consider undeveloped arguments). Neither Jackson's motion seeking postconviction relief nor his appellate brief contends, however, that his trial lawyer was ineffective in acquiescing to the trial court's approval of Natisha Watkins's privilege not to testify.

¶ 20. Although finding that Natisha Watkins was unavailable as a witness because it permitted her to assert her Fifth Amendment right, the trial court excluded what Natisha Watkins told Papka because it determined that her statement that Carlos Williams and not Jackson handled the gun was not against *her* penal interest. Other than a passing contention that the trial court's determination conflicted with the trial court's assessment that Natisha Watkins could invoke her Fifth Amendment right to not testify, Jackson's appellate brief does not argue why the trial court's analysis was wrong. Indeed, the trial court was correct.

778

*See Williamson v. United States*, 512 U.S. 594, 600–601 (1994) (Rule 804(b)(3) of the Federal Rules of Evidence, the federal analogue to WIS. STAT. RULE 908.045(4), "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.").

### C. *Prosecutor's closing argument.*

¶ 21. Jackson also argues that the prosecutor during her rebuttal closing argument improperly expressed her personal belief that he was guilty. His trial lawyer did not object, however, and Jackson argues on this appeal that the lawyer thus ineffectively represented him under the rubric recognized by *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (defendant claiming ineffective assistance of counsel must establish that: (1) the lawyer's representation was deficient, and (2) as a result, the defendant was prejudiced). In light of our decision to reverse and remand for a new trial because the trial court did not let the jury know that Carlos Williams had a prior felony conviction and thus his comments to Papka made him vulnerable to possible criminal prosecution, we need not assess whether the twin *Strickland* requirements are met here in connection with the prosecutor's closing-argument assertions. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be analyzed).

¶ 22. We believe, however, that it is important to remind all lawyers, as well as prosecutors, that it is a violation of the lawyer's code of ethics for a lawyer to tell a jury what he or she believes is the truth of the

779

case, unless it is clear that the lawyer's belief is merely a comment on the evidence before the jury. Supreme Court Rule 20:3.4 is explicit:

> A lawyer shall not: . . . **(e)** in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, *assert personal knowledge of facts in issue* except when testifying as a witness, *or state a personal opinion as to the justness of a cause,* the credibility of a witness, the culpability of a civil litigant *or the guilt or innocence of an accused.*[2]

(Emphasis and footnote added.) *See also State v. Johnson,* 153 Wis. 2d 121, 133 n.11, 449 N.W.2d 845, 850 n.11 (1990) (It is "unprofessional 'for the prosecutor to express his or her personal belief.' ") (quoting ABA STANDARDS FOR CRIMINAL JUSTICE § 3–5.8(b) (2d ed. supp. 1986); *United States v. Young,* 470 U.S. 1, 6–11 (1985) (discussing expressions of personal belief by counsel). We set out in context the offending remark by the prosecutor, Milwaukee County assistant district attorney Irene E. Parthum:

> I think that the State has proven its elements. I think that this kind of a vague Early Watkins' statement is not consistent with Carlos Williams and Carlos Williams' one is not consistent with the facts as they were found. I'm asking you to find the defendant guilty *because I believe truly that he is guilty,* but your belief is the one that counts, and there is no jury in the world that is more credible and qualified to do this than you.[3]

---

[2] The Rules of Professional Conduct were amended, effective July 1, 2007, by Supreme Court Order 04–07, 2007 WI 4. Supreme Court Rule 20:3.4(e) is unchanged.

[3] The "no jury in the world that is more credible and qualified to do this than you" comment was, arguably, in

(Emphasis and footnote added.) The "I believe truly that he is guilty" assertion was improper and violated the then-extant Supreme Court Rule 20:3.4(e) as well as the one that will be effective July 1, 2007. We trust that all lawyers will comply fully with both the spirit and letter of Rule 20:3.4(e), and that the trial courts will enforce this obligation. *See Young*, 470 U.S. at 7–10 (discussing obligations of the trial courts in preventing lawyer misconduct).

¶ 23. We reverse and remand for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded.

response to what the prosecutor perceived was Jackson's lawyer's invitation to the jury to not reach a unanimous verdict, and thus was not *per se* inappropriate. *See United States v. Young*, 470 U.S. 1, 12–19 (1985) (discussing "invited response").