COURT OF APPEALS
DECISION
DATED AND FILED

September 12, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP882-CR**

Cir. Ct. No. 2015CF359

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

TERRANCE L. CURTIS,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Jefferson County: RANDY R. KOSCHNICK and JENNIFER L. WESTON, Judges. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   A jury found Terrance Curtis guilty of first-degree reckless homicide for causing the death of his five-month-old son, R.C.   Curtis raises four issues on appeal:  (1) whether he received ineffective assistance of counsel when his trial counsel failed to timely produce his expert witness's report, resulting in a sanction limiting the expert's testimony at trial; (2) whether the circuit court erred by declining to exclude from the courtroom during trial R.C.'s maternal grandmother, D.O., when Curtis's theory of defense was that D.O. was the third-party perpetrator of the crime; (3) whether the court erred by admitting testimony by a law enforcement officer regarding nonverbal behavior by Curtis during an interview, which Curtis asserts amounted to impermissible opinion testimony as to Curtis's truthfulness; and (4) whether Curtis is entitled to a new trial in the interest of justice and whether he received a constitutionally fair trial as a result of these errors.

¶2    As to the first issue, we conclude that Curtis's ineffective assistance of counsel claim fails because Curtis has not shown that he was prejudiced by trial counsel's failure to timely produce the expert report.  As to the second issue, we conclude that Curtis has not shown that the circuit court erroneously exercised its discretion by permitting D.O. to remain in the courtroom during the trial.  We do not address the third issue, based on Curtis's concession that he has forfeited it.  Finally, we conclude that, because Curtis's arguments regarding the first three issues fail, he has not shown either that his trial was constitutionally defective or that he is entitled to a new trial in the interest of justice.  Accordingly, we affirm.

## BACKGROUND

¶3    On the evening of October 22, 2015, five-month-old R.C. was found dead in a residence where he had been living with multiple family members,

including his father, Curtis, and his maternal grandmother, D.O. Medical examination revealed that R.C. died of blunt force trauma to his head. Following a police investigation, the State charged Curtis with one count of first-degree reckless homicide, alleging that Curtis caused R.C.'s death.

¶4 Prior to the jury trial, Curtis sought and received permission from the circuit court to introduce evidence and argue that D.O. was responsible for R.C.'s death, pursuant to **State v. Denny**, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984). At trial, Curtis argued to the jury that law enforcement had not adequately investigated the scene, specifically the back deck of the house where D.O. had been at the time of R.C.'s death. We will present the trial evidence pertinent to the issues on appeal in the discussion section that follows. The jury found Curtis guilty as charged.

¶5 Curtis filed a postconviction motion for a new trial, alleging that he had received ineffective assistance of trial counsel and that he was entitled to a new trial in the interest of justice. The circuit court held an evidentiary hearing at which it heard testimony from trial counsel and from Curtis's trial expert, Gary Rini. Following the hearing, the court denied Curtis's motion for a new trial. Curtis appeals.[1]

## DISCUSSION

¶6 As stated, Curtis raises four issues on appeal. We address each issue in turn.

---

[1] The Honorable Randy R. Koschnick presided over trial and entered the judgment of conviction. The Honorable Jennifer L. Weston entered the order denying Curtis's postconviction motion.

## I. Ineffective Assistance of Trial Counsel

¶7    Curtis first argues that he is entitled to a new trial because he received ineffective assistance of trial counsel when trial counsel failed to timely produce Curtis's expert witness's report, resulting in a sanction limiting the expert's testimony at trial.  We first set out the law related to claims of ineffective assistance of counsel.  We next present the facts pertinent to the content and production of the expert's report.  We then explain that Curtis's claim fails because he has not shown that he was prejudiced by trial counsel's failure to timely produce the expert report.

### A. Legal Principles

¶8    The Wisconsin Supreme Court has summarized the standards for claims of ineffective assistance of counsel as follows:

> Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact.  The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo.  To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial.  If the defendant fails to satisfy either prong, we need not consider the other.
>
> Whether trial counsel performed deficiently is a question of law we review de novo.  To establish that counsel's performance was deficient, the defendant must show that it fell below "an objective standard of reasonableness."  In general, there is a strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance."  Additionally, "[c]ounsel's decisions in choosing a trial strategy are to be given great deference."
>
> Whether any deficient performance was prejudicial is also a question of law we review de novo.  To establish

that deficient performance was prejudicial, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*State v. Breitzman*, 2017 WI 100, ¶¶37-39, 378 Wis. 2d 431, 904 N.W.2d 93 (quoted sources and citations omitted).

## B. Pertinent Facts

¶9 On May 13, 2016, the circuit court entered a scheduling order requiring, among other things, that the parties file with the court their disclosures of expert witnesses, "along with any required statements, reports[,] or summaries," by July 22, 2016. On July 22, trial counsel filed a document entitled "Notice of Expert Testimony," which offered a "summary" of testimony to be given by Curtis's expert, Gary Rini. The summary stated that "Mr. Gary A. Rini … will testify as to proper investigative techniques and protocols for death crime scene investigations and offer his opinion regarding the practices and procedures in the instant case."

¶10 Following trial counsel's submission of the Notice of Expert Testimony, the State sent trial counsel two separate communications asking trial counsel to produce a copy of Rini's expert report or a summary of Rini's findings. When trial counsel did not respond to these requests, the State filed a motion to compel discovery. At a hearing on the motion on August 24, 2016, the circuit court ordered trial counsel to produce a written summary of Rini's anticipated testimony by August 26. The court also ordered trial counsel to produce "either a report from [Rini] or a supplemental letter … containing the information" trial

counsel anticipated that Rini would offer by September 2. The court stated that it was "inclined to exclude" any anticipated testimony produced after September 2.

¶11 On September 2, 2016, the State moved to exclude Rini's testimony on the grounds that trial counsel had not produced either a copy of Rini's report or a written summary of his findings. At a subsequent hearing, the State and trial counsel agreed that trial counsel did not produce a copy of a report until September 9—one week after the September 2 deadline.[2] At a subsequent hearing, trial counsel advised that Rini would testify to crime scene processing issues and to "manner of death" issues. Trial counsel noted that "the manner of death is obviously blunt force trauma. The question is, who, what, where, when, why?" The State responded that it could be prepared to address Rini's testimony as to crime scene processing but not Rini's testimony as to his opinion regarding the question of the manner of death.

¶12 The circuit court ultimately determined that trial counsel had violated the court's scheduling order without good cause. The court ordered that Rini could "testify and render opinion testimony as it relates to crime scene investigation and procedures as discussed and written in his report," but not "concerning the manner of [R.C.'s] death because that would be unfairly prejudicial to the State."

¶13 Rini testified at trial. His testimony centered on what he opined were mistakes in law enforcement's handling of the crime scene, such as law

---

[2] In his briefing on appeal, Curtis states that "the State acknowledged receiving a report by Rini on August 9." However, the portion of the transcript cited by Curtis establishes that the State represented that it received the report on *September* 9, not August 9.

enforcement's alleged failures to control access to the scene or to separate witnesses for individual questioning. Rini also testified that there were three "possibilities" including the grandmother, the father, or a third party. Rini testified that law enforcement did not properly photograph and document the deck area and the ground below and that, as a result, investigators failed to discern "a possibility that the baby was dropped" from the deck.

¶14 Rini again testified at the postconviction hearing. There, he gave testimony that, as we discuss below, was similar in content to his trial testimony. We present further details concerning Rini's testimony at the trial and at the postconviction hearing in the discussion that follows.

*C. Whether Curtis Received Ineffective Assistance of Counsel*

¶15 Curtis argues that he received ineffective assistance of counsel when trial counsel failed to timely produce a copy of Rini's report, resulting in the sanction prohibiting him from testifying about the manner of R.C.'s death. We assume, without deciding, that trial counsel performed deficiently by failing to timely provide a copy of Rini's report. However, we conclude that Curtis has not shown that he suffered any prejudice as a result of trial counsel's deficient performance; therefore, his claim of ineffective assistance of counsel fails.

¶16 As best we can tell, Curtis argues that he was prejudiced by the sanction limiting Rini's testimony in two ways. First, he argues that the sanction prevented Rini from testifying that R.C.'s injuries might have been caused by a fall from the back deck, where D.O. was standing. Stated another way, Curtis argues that, but for trial counsel's deficient performance, Rini would have "affirmed trial counsel's theory that a fall from the deck could have been one

possible source of R.C.'s injuries[,] given the deck's height and topography below it."

¶17    This first argument fails because, as we now explain, Curtis concedes that Rini was not qualified to give an opinion regarding whether R.C.'s injuries were consistent with a fall from the deck and, therefore, Rini's testimony on that topic would have been inadmissible.  In its response brief, the State argues that "Rini lacked the necessary qualifications" to offer an opinion that R.C.'s injuries could have been caused by a fall from the back deck.  To support its argument, the State cites Rini's testimony at the postconviction hearing, in which Rini agreed that the "cause, manner, and mechanism of death were outside of [his] purview as an expert."  The State contends that "because Rini was unqualified to opine if [R.C.] could have sustained these injuries by being tossed off the deck, counsel's failure to timely disclose this opinion did not prejudice Curtis."

¶18    In his reply brief, Curtis concedes that although Rini was "qualified to render an opinion as to law enforcement's processing of the back deck and how it was deficient," Rini was not "qualified to render an opinion as to the cause of the child's death from a medical standpoint...."  Moreover, Curtis does not dispute the State's argument that because Rini was not qualified to render an opinion regarding the cause of death, exclusion of his testimony on the topic of whether R.C.'s injuries were consistent with a fall from the deck was not prejudicial.  We consider the State's argument to be conceded.  *See **State v. Chu***, 2002 WI App 98, ¶41, 253 Wis. 2d 666, 643 N.W.2d 878 (argument raised in State's response brief not disputed in defendant's reply may be deemed admitted).

¶19    Curtis's second argument concerning prejudice is that, as a result of the sanction, Rini was prevented from testifying at trial about "law enforcement's

processing of the back deck," with the result that Curtis was less able to "support[] … the overall defense theory that there was an alternate manner of death and an alternate suspect." As we now explain, we reject this argument because it rests on the incorrect premise that Rini was prevented from testifying on this topic at trial.

¶20 Curtis specifically argues that the sanction prevented Rini from giving at trial testimony that he gave at the postconviction hearing concerning the processing of the back deck area. However, the testimony that Rini gave at the postconviction hearing regarding alternate suspects and law enforcement's processing of the deck was substantially similar to the testimony he had already offered at trial.

¶21 At the postconviction hearing, Rini testified that the law enforcement investigation of the deck was inadequate because D.O. was standing on the deck around the time that the incident occurred and because officers did not return to the scene to investigate and photograph the deck area in daylight, did not take comprehensive measurements of the deck area, and did not document the consistency of materials on and around the deck. At trial, as stated above, Rini testified that there was a "possibilit[y]" that D.O. was responsible for R.C.'s death, and that law enforcement's investigation and processing of the deck area were not adequate. Specifically, he testified that law enforcement should have "take[n] a picture of the deck and the surface below the deck and see[n] if there's a possibility that the baby was dropped"; that law enforcement should have looked at "the condition of that area beneath the deck"; and that law enforcement should have "memorialized [the scene] inside and out" before allowing others to access it.

¶22 As stated, Rini's testimony at both the trial and the postconviction hearing addressed the same topic, namely, whether law enforcement properly

processed and investigated the back deck area. Moreover, the testimony at both proceedings suggested that Rini considered D.O. a "possibilit[y]" and that law enforcement had erred by failing to properly photograph and document the back deck area, to investigate the types of materials on and beneath the deck, and to control access to the scene.

¶23 Given the substantial overlap between Rini's trial testimony and Rini's postconviction testimony, we cannot conclude that there is a "reasonable probability that … the result of the proceeding would have been different" had the postconviction testimony been presented at trial. *See **Breitzman***, 378 Wis. 2d 431, ¶39 (quoted source omitted).

¶24 Curtis contends that while Rini did testify at trial "regarding some crime scene processing issues, such testimony failed to bolster the defense theory as to an alternate manner of death caused by an alternate suspect." However, Curtis does not explain why Rini's testimony at the postconviction hearing was any more supportive of Curtis's theory of defense than his trial testimony, and we do not consider this argument further. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider undeveloped arguments).

¶25 In sum, Curtis fails to show that he was prejudiced by trial counsel's untimely filing of Rini's report. Therefore, he has not shown that he received ineffective assistance of counsel. *See **Breitzman***, 378 Wis. 2d 431, ¶37.

## II. Exclusion of D.O. from Trial Proceedings

¶26 Curtis argues that the circuit court erred by failing to exclude D.O. from the courtroom during the presentation of testimony by the other witnesses.

10

¶27    WISCONSIN STAT. § 906.15 (2017-18)[3] provides the framework governing the circuit court's decision as to the exclusion of witnesses. It provides,

> (1) At the request of a party, the judge … shall order witnesses excluded so that they cannot hear the testimony of other witnesses. The judge … may also make the order of his or her own motion.
>
> (2)  Subsection (1) does not authorize exclusion of any of the following:
>
> …
>
> (d) A victim, as defined in s. 950.02 (4), in a criminal case or a victim, as defined in s. 938.02 (20m), in a delinquency proceeding under ch. 938, unless the judge or circuit court commissioner finds that exclusion of the victim is necessary to provide a fair trial for the defendant or a fair fact-finding hearing for the juvenile. The presence of a victim during the testimony of other witnesses may not by itself be a basis for a finding that exclusion of the victim is necessary to provide a fair trial for the defendant or a fair fact-finding hearing for the juvenile.
>
> (3) The judge or circuit court commissioner may direct that all excluded and non-excluded witnesses be kept separate until called and may prevent them from communicating with one another until they have been examined or the hearing is ended.

Sec. 906.15. The statute is consistent with the Wisconsin Constitution, which provides that a "victim" has the opportunity "to attend court proceedings unless the [circuit] court finds sequestration is necessary to a fair trial for the defendant." WIS. CONST. art. I, § 9m.

¶28    Whether to exclude a witness under WIS. STAT. § 906.15 is within the circuit court's discretion. *State v. Evans*, 2000 WI App 178, ¶7, 238 Wis. 2d

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

411, 617 N.W.2d 220. "We review a discretionary decision only to determine whether the [circuit] court examined the facts of record, applied a proper legal standard, and, using a rational process, reached a reasonable conclusion." *State v. Pittman*, 174 Wis. 2d 255, 268, 496 N.W.2d 74 (1993) (quoted source omitted). The party asserting that the circuit court erroneously exercised its discretion has the burden of establishing that assertion. *Colby v. Colby*, 102 Wis. 2d 198, 207-08, 306 N.W.2d 57 (1981).

¶29    As stated, prior to trial Curtis sought and received permission to introduce evidence and argue that D.O. was responsible for R.C.'s death, pursuant to *Denny*. The following is additional pertinent background. After the circuit court's *Denny* ruling and prior to trial, Curtis moved to exclude D.O. from the trial proceedings, including voir dire, opening statements, and witness testimony, on the grounds that D.O. would be a witness and was the subject of the *Denny* motion. The court denied Curtis's motion to exclude D.O. because D.O. is a "victim" as that term is defined in WIS. STAT. § 950.02(4),[4] and Curtis had not provided any "specifics" showing that exclusion of D.O. was "necessary to provide a fair trial for the defendant." WIS. STAT. § 906.15(2)(d). In addition, the court ordered every witness, including D.O., to refrain from discussing his or her testimony with other witnesses and determined that "allowing [D.O.] to be present but directing her not to discuss testimony with any other witnesses" would "accommodate" Curtis's right to a fair trial and the victim's right to be present.

---

[4] A "victim" includes "a person who resided with the person who is deceased." WIS. STAT. § 950.02(4)(a)4. It is undisputed that D.O. lived in the same house with R.C., and the parties agree she is therefore a victim as defined by the statute.

12

¶30    Curtis makes four arguments supporting his challenge to the circuit court's decision not to exclude D.O., none of which is persuasive. Curtis's first argument is that Curtis's right to a fair trial was compromised because D.O., by remaining in the courtroom, would be able to "observe and hear evidence prior to her giving her own testimony, and then to shape her own testimony in light of such evidence." Specifically, Curtis argues that D.O. would be able to craft answers to rebut other witnesses' testimony that she was intoxicated and uncooperative with law enforcement on the night of R.C.'s death. As stated above, the court rejected this argument as lacking in specifics sufficient either to show that Curtis's right to a fair trial would be compromised or to override D.O.'s right to be present during the trial, and determined that both rights could be accommodated by the court's order that D.O. and the other witnesses not discuss their testimony with other witnesses.

¶31    The problem with Curtis's argument on appeal is that it overlooks our standard of review. Curtis made this argument to the circuit court, and the court rejected it. The question presented on appeal is not whether we would reach the same decision were we to engage in an independent analysis. Rather, the sole question is whether, in rejecting this argument, the court acted within its discretion. *Evans*, 238 Wis. 2d 411, ¶7. Curtis fails to develop any argument that the court applied the wrong legal standard or relied on facts not of record or reached a conclusion that no reasonable judge could reach, and his argument fails as a result. *See Colby*, 102 Wis. 2d at 207-08 (party alleging erroneous exercise of discretion has the burden of establishing that assertion).

¶32    While our analysis could stop there, for the sake of completeness we explain that our review of the record indicates that the circuit court acted well within its discretion in rejecting Curtis's first argument. In ruling on whether D.O.

should be excluded, the court relied on WIS. STAT. § 906.15 and WIS. CONST. art. I, § 9m and correctly stated the question presented as whether exclusion of D.O. was "necessary … to give the defendant a fair trial." In response to Curtis's argument that D.O. might change her testimony in response to other witnesses' testimony, the court stated that it did not "see much wiggle room in [D.O.'s] story" and did not "see what she could change." The court reasoned that if D.O. did change her testimony to be inconsistent with statements she had previously given to law enforcement, Curtis would be able to impeach her on cross-examination; thus, any such testimony from D.O. would help, not hurt, Curtis and his right to a fair trial would not be compromised. The court also reasoned that ordering D.O. and the other witnesses not to discuss their testimony with other witnesses would "guard[] against her comparing notes … with other witnesses," and that it could "accommodate the defendant's [right to a fair trial] and the victim's right to be present by allowing [D.O.] to be present but directing her not to discuss testimony with any other witnesses." Based on this reasoning, the court stated that it did "not find [that exclusion] is necessary to a fair trial for the defendant."

¶33    From this record, we conclude that the circuit court applied the correct legal standard and, using a rational process based on facts of record, reached a reasonable conclusion. It therefore acted within its discretion. *See* ***Pittman***, 174 Wis. 2d at 268.

¶34    The second argument is that Curtis's right to a fair trial was compromised because D.O.'s presence in the courtroom "communicated to the jury nonverbal information" such as her "demeanor, physicality, expressions, and mannerisms." According to Curtis, the jury's ability to assess D.O. off the witness stand necessarily benefited the State's case by undermining the possibility that

D.O. had committed the crime.[5] This argument suffers from the same defect as the first argument, in that it was made to and rejected by the circuit court, and Curtis does not explain how the court misused its discretion. Moreover, in his postconviction motion, Curtis fails to identify any specific expressions or demeanor by D.O. that were of concern.

¶35 Curtis's third argument is that D.O.'s presence in the courtroom "constituted an implicit message that the prosecutor did not believe that D.O. was responsible for [R.C.'s] death." This, Curtis asserts, runs afoul of what he asserts to be the rule that a "prosecutor may not express his or her personal belief in a defendant's guilt[]." *See State v. Jackson*, 2007 WI App 145, ¶22, 302 Wis. 2d 766, 735 N.W.2d 178 ("it is a violation of the lawyer's code of ethics for a lawyer to tell a jury what he or she believes is the truth of the case…"). This argument is defeated by the State's response, not contested by Curtis, that regardless of D.O.'s presence, "the jury could reasonably conclude that the [prosecutor] believed Curtis was solely responsible for [R.C.'s] death based on [her] closing argument synopsizing the evidence against Curtis." Because Curtis has not replied to the State's response, he has conceded that it is correct and his third argument lacks merit. *See Chu*, 253 Wis. 2d 666, ¶41.

¶36 Curtis's fourth argument is that because D.O. was "a third-person suspect under *Denny*, the circuit court had to exclude her to ensure a fair trial." In effect, Curtis appears to suggest that this court should create a new, blanket rule

---

[5] Relatedly, Curtis argues that "D.O.'s presence in the courtroom evoked sympathy and other emotional appeal," such that the jury was less likely to believe she was responsible for R.C.'s death. This appears to be a variant of the argument that the State gained an unfair advantage by virtue of the jury observing D.O. off the witness stand. We do not see sufficient independent merit to this argument to warrant separate discussion.

that exclusion of a third-party *Denny* suspect is required in all instances in order for a defendant to receive a fair trial. We decline Curtis's invitation to institute such a sweeping rule because he has failed to support it with relevant legal authority. *See Pettit*, 171 Wis. 2d at 646-47 (we need not consider undeveloped arguments or arguments unsupported by legal authority).

¶37    In sum, Curtis fails to show that the circuit court erroneously exercised its discretion by declining to exclude D.O. from the courtroom during the presentation of testimony.

### III.  Testimony Related to Curtis's Nonverbal Conduct

¶38    Curtis argues that the circuit court erred by admitting testimony from a law enforcement witness, Detective Daniel Horvatin, concerning Curtis's nonverbal conduct at an interview. Curtis asserts that Horvatin's testimony amounted to an impermissible opinion that Curtis was lying at the interview, in contravention of *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984). The State responds that Curtis forfeited this issue by not objecting to either the questions or the testimony, and Curtis concedes the forfeiture issue in his reply brief.

¶39    We generally do not consider issues raised for the first time on appeal. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("Issues that are not preserved at the circuit court … generally will not be considered on appeal."). We conclude that Curtis has both forfeited his right to raise this argument on appeal and failed to provide a persuasive reason that we should entertain the argument despite his failure to preserve it in the circuit court.

*IV. New Trial in the Interest of Justice and Right to a Fair Trial*

¶40     Curtis argues that he is entitled to a new trial in the interest of justice because the real controversy has not been fully tried, and, accordingly, asks us to exercise our power of discretionary reversal under WIS. STAT. § 752.35. In addition, Curtis cites the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section Seven of the Wisconsin Constitution and argues that the "cumulative effect" of the alleged errors deprived him of his constitutional right to a fair trial. However, we have already explained why the alleged errors that form the basis of both arguments are not problematic. We therefore decline to exercise our discretion to reverse his conviction in the interest of justice, and we also see no reason to conclude that Curtis's right to a fair trial was compromised.

**CONCLUSION**

¶41     For the reasons stated, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.